830 F.2d 1009
 56 USLW 2257, 8 Employee Benefits Ca 2593
 BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS
PENSION TRUST FUND, Plaintiff-Appellant,
v.
H.F. JOHNSON, INC.; Midland Terminal Inc.; Lockwood
Leasing Company; Rocky Mountain Feed Ingredients Services
Inc.; First Trust Company of Montana, in its Capacity as
Personal Representative of the Estate of Robert L. Mitchell
for the Benefit of Sara Jayne Mitchell and Trevor Robert
Newton Mitchell, and Richard L. Mitchell, Defendants-Appellees.
 No. 86-4394.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1987.
Decided Oct. 16, 1987.
 
 Bruce D. Corker and Christopher J. Biencourt, Perkins Coie, Seattle, Wash., for plaintiff-appellant Bd. of Trustees.
 Scott A. Smith, Seattle, Wash., for defendant-appellee First Trust Co. of Montana.
 Jon E. Doak, Billings, Mont., for defendant-appellee Richard Mitchell.
 Jeanne K. Beck, Washington D.C., for amicus curiae Pension Benefit Guar. Corp.
 Appeal from the United States District Court for the Western District of Washington.
 Before CANBY, REINHARDT and BEEZER, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 The Board of Trustees of the Western Conference of Teamsters Pension Trust Fund (The Fund) appeals the district court's decision 1) that joint venturers may not be held personally liable for their business's withdrawal obligations under the Multiemployer Pension Plan Amendments to the Employee Retirement Income Security Act (ERISA), and 2) that the Montana non-claim statute governing actions against decedents' estates bars the Fund's action to collect withdrawal liability under ERISA from the estate of a deceased joint venturer. We reverse the judgment on both issues.
 
 
 2
 * Background
 
 
 3
 The Fund is a multiemployer pension fund, administered under ERISA, 29 U.S.C. Sec. 1001 et seq., for the benefit of employees represented by the Western Conference of Teamsters. Employers participating in the Fund must pay regular contributions based on wages earned and hours worked by employees.
 
 
 4
 The Fund in this case is a "defined benefit" fund. In such funds, benefits vested in employees typically exceed total contributions made by an employer on behalf of those employees. See Connolly v. Pension Benefit Guaranty Corp., 581 F.2d 729, 733 (9th Cir.1978), cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). In order to prevent employers from withdrawing from multiemployer funds before contributions are sufficient to cover vested benefits, Congress enacted the Multiemployer Pension Plan Amendments Act (MPPAA). MPPAA requires employers who cease to participate in multiemployer funds to pay "withdrawal liability" based on the difference between actual contributions and vested benefits of employees. Under ERISA 29 U.S.C. Sec. 1301(b)(1), all entities under common control of 5 or fewer persons are liable for a single entity's withdrawal liability. The control group is considered a single employer. Id.
 
 
 5
 Robert and Richard Mitchell were each 49.5% shareholders in H.F. Johnson, Inc. H.F. Johnson withdrew from the Fund in 1981. When H.F. Johnson failed to pay its withdrawal obligation, the Fund sued and obtained judgment against the corporation for the amount of the obligation. Board of Trustees Etc. v. H.F. Johnson, 606 F.Supp. 231 (W.D.Wash.1985). H.F. Johnson is not a party to this appeal.
 
 
 6
 While attempting to enforce the judgment, the Fund discovered that Robert and Richard Mitchell were also joint venturers with a 99% interest in Lockwood Leasing Company. The parties concede that Lockwood and H.F. Johnson were under the common control of Robert and Richard Mitchell.
 
 
 7
 Robert Mitchell died June 20, 1984. On October 1, 1985, the Fund sued Lockwood, Richard Mitchell, and First Trust Company of Montana (personal representative of Robert's estate) for H.F. Johnson's withdrawal liability.
 
 The District Court Decision
 
 8
 On cross motions for summary judgment, the district court held that Lockwood was liable as a commonly controlled entity for H.F. Johnson's withdrawal liability. Lockwood does not appeal. The court further held that neither Robert Mitchell's Estate nor Richard Mitchell could be held liable for Lockwood's obligation based on their status as joint venturers in Lockwood and, in any event, that the Montana nonclaim statute barred the Fund's action against First Trust as personal representative of Robert's estate. The Fund appeals.
 
 II
 Jurisdiction
 
 9
 The district court had jurisdiction under 29 U.S.C. Sec. 1451(c). Federal Rule of Civil Procedure 58 requires the clerk of the district court to enter judgment according to the decision of the district court in a separate document. The district court docket sheet indicates that no separate judgment concerning First Trust, Richard Mitchell or Lockwood has been entered.[1]
 
 
 10
 The separate judgment rule of Rule 58 is not jurisdictional and may be waived, either expressly or by implication. Bankers Trust Co. v. Mallis, 435 U.S. 381, 383-84, 98 S.Ct. 1117, 1119-20, 55 L.Ed.2d 357 (1978); Vernon v. Heckler, 811 F.2d 1274, 1276-77 (9th Cir.1987). The Fund has expressly waived application of the separate judgment rule in this case.
 
 
 11
 The district court granted First Trust's and Richard's motions for summary judgment on November 6, 1986. The Fund filed a notice of appeal on December 4, 1986. This appeal is timely. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 III
 Analysis
 
 12
 A. Withdrawal Liability of Lockwood Under 29 U.S.C. Sec. 1301(b)(1)
 
 
 13
 Lockwood does not appeal the district court's ruling that Lockwood is jointly liable as an employer for H.F. Johnson's withdrawal liability. However, Richard and First Trust contend that imposition of withdrawal liability on Lockwood (and themselves by virtue of their participation in Lockwood) violates the Due Process Clause of the Fifth Amendment.[2]
 
 1. The Statutory Scheme
 
 14
 MPPAA, 29 U.S.C. Sec. 1381 provides that, when an employer withdraws from a multiemployer plan, "the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Section Sec. 1301(b)(1) provides that "[f]or purposes of this subchapter ... businesses (whether incorporated or unincorporated) which are under common control shall be treated ... as a single employer." 29 U.S.C. Sec. 1301(b)(1).
 
 
 15
 Congress enacted section 1301 in 1974 as part of subchapter III of ERISA. The withdrawal liability provisions, 29 U.S.C. Secs. 1381 et seq., were added to the same subchapter by MPPAA. MPPAA also amended Sec. 1301(a). Subsection (b) of Sec. 1301 (the common control provision) was purposely left unchanged. See 126 Cong.Rec. S11672 (Aug. 26, 1980) (Remarks of Senator Williams). The plain language of Sec. 1301(b) indicates that businesses under common control are to be treated as a single employer for purposes of withdrawal liability (29 U.S.C. Sec. 1381).[3] Lockwood is liable under Secs. 1301 and 1381 as a commonly controlled entity for H.F. Johnson's withdrawal liability.
 
 2. Due Process
 
 16
 First Trust and Richard contend that Sec. 1301(b) violates Due Process unless the Plan can show that Lockwood derived some benefit from association with H.F. Johnson. First Trust and Richard assert injury to economic interests. Where economic interests are at stake, "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Beyond simple rationality, no particular degree of relation between the end of economic legislation and the means used to further the end is required. See, e.g., Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).
 
 
 17
 Congress enacted Sec. 1301(b) in order to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities:
 
 
 18
 the committee ... intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided by operating through separate corporations instead of separate branches of one corporation.
 
 
 19
 S.Rep. No. 383, 93d Cong., 2d Sess. 43, reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 4890, 4928; see also H.Rep. No. 807, 93d Cong., 2d Sess. 50, reprinted in 1974 U.S. Code Cong. & Ad. News, 4670, 4716; Center City Motors, 609 F.Supp. at 412. Joint liability for commonly controlled businesses is a rational means for preventing dispersion of assets used in a common enterprise. See Ouimet II, 711 F.2d at 1089.
 
 
 20
 First Trust and Richard also claim that Sec. 1301(b) violates procedural requirements of the Due Process Clause because the Fund did not sue Lockwood, First Trust and Richard until after the Fund had obtained judgment for withdrawal liability against H.F. Johnson. However, the requirement of common control in Sec. 1301(b) assures that individuals and entities who may ultimately be held liable for withdrawal liability in fact have notice and an opportunity to contest the existence and extent of that liability.
 
 
 21
 Section 1301(b) does not violate substantive or procedural Due process.
 
 
 22
 B. Personal Withdrawal Liability For Joint Venturers Under ERISA
 
 
 23
 The Fund asserts that the Robert Mitchell Estate and Richard Mitchell are personally liable as joint venturers in Lockwood. First Trust and Richard do not challenge the district court's finding that Lockwood is a joint venture.
 
 
 24
 Congress did not preclude the possibility of individual liability under MPPAA. Section 1381 is silent as to whether persons other than employers may be liable for withdrawal payments. However, 29 U.S.C. Sec. 1405(c) provides
 
 
 25
 [t]o the extent that the withdrawal liability of an employer is attributable to his obligation to contribute to or under a plan as an individual (whether as a sole proprietor or as a member of a partnership ), property which may be exempt from the estate under section 522 of Title 11 or under similar provisions of law, shall not be subject to enforcement of such liability.
 
 
 26
 (emphasis added).
 
 
 27
 Section 1405(c) protects only those assets which would be exempt under the bankruptcy code from being used to satisfy withdrawal liability of partners and sole proprietors. Other personal non-business assets of an individual which are not exempt under the bankruptcy code may be liquidated to satisfy a partner's or sole proprietor's withdrawal liability. The legislative history of Sec. 1451(c) confirms this view:
 
 
 28
 The Committees recognize that some employers that are obligated to contribute to multiemployer plans are individuals, i.e. sole proprietors or partners. The Committees believe that if such an employer withdraws from a multiemployer plan, some of the employer's personal assets, such as his residence, should be shielded from employer liability. A special rule provides that where the withdrawn employer is an individual, the employer's personal assets that would be exempt under bankruptcy law will be protected from employer liability.
 
 
 29
 126 Cong.Rec. S20195 (daily ed. July 29, 1980) (emphasis added).
 
 1. Applicable Law
 
 30
 Although MPPAA contemplates individual withdrawal liability where the employer is a sole proprietorship or partnership, MPPAA does not expressly create such liability. MPPAA provides that an employer's failure to pay withdrawal liability "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. Sec. 1451(b).
 
 
 31
 While we may look to state law for guidance, Laborers Clean-up Contract Administration Trust Fund v. Uriarte Clean-up Service, Inc., 736 F.2d 516, 523 (9th Cir.1984), the question of whether the Robert Mitchell Estate and Richard Mitchell are liable for Lockwood's withdrawal liability is ultimately one of federal law. Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29942 (1974) (Remarks of Senator Javits); see Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 156, 105 S.Ct. 3085, 3098, 87 L.Ed.2d 96 (1974) (Brennan, J. concurring).
 
 2. Common Law of Joint Venturer Liability
 
 32
 Whether the principals in joint ventures may be held personally liable for a joint venture's withdrawal liability is a question of first impression in this Circuit. This is a question of law, which the Court reviews de novo. See, e.g., Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1109-11 (9th Cir.1979) (deciding de novo whether shareholders and officers may be held personally liable for corporation's obligations under LMRA).
 
 
 33
 Joint venturers are treated the same as general partners for tax purposes. 26 U.S.C. Sec. 7701(a)(2); Schaffer v. Commissioner of Internal Revenue, 779 F.2d 849, 852 (2d Cir.1985). The Department of Treasury has specifically applied this definition in the context of ERISA liability. 26 C.F.R. Sec. 11.414(c)-2(a). Commentators generally regard joint ventures as a sub-species of partnership. See, e.g., H. Reuschlein, W. Gregory, Agency and Partnership, Sec. 266 (1979). "As a general rule the substantive law of partnerships is applicable in determining the rights and liabilities of joint venturers...." Stone v. First Wyoming Bank, 625 F.2d 332, 340 (10th Cir.1980); see Decker Coal Co. v. Commonwealth Edison Co., 714 P.2d 155, 156 (Mont.1986) ("Under Montana law a joint venture ... is treated like a partnership.")
 
 
 34
 Absent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership. Uniform Partnership Act Sec. 17. In United Food & Commercial Workers Union v. Progressive Supermarkets, 644 F.Supp. 633, 642 (D.N.J.1986) and Connors v. Calvert Development Co., 622 F.Supp. 877 (D.D.C.1985), district courts allowed recovery of withdrawal liability from partners and partnerships under common control with defaulting corporate employers. We hold that Robert Mitchell's Estate and Richard Mitchell are personally liable as joint venturers for Lockwood's withdrawal obligation.
 
 
 35
 First Trust and Richard rely on decisions which have held shareholders and officers not personally liable for withdrawal obligations of corporations. The fundamental difference between corporations and partnerships, (i.e., shareholders and officers enjoy limited liability; partners do not) makes these precedents inapplicable to this case.[4]
 
 
 36
 First Trust and Richard contend that Sec. 1405(c), in protecting assets exempt under the bankruptcy code, limits withdrawal liability only for persons who are obliged "to contribute to or under a plan as an individual." 29 U.S.C. Sec. 1405(c). As a result, the argument goes, liability for individuals who do not have a "direct" obligation to contribute to pension funds would, perversely, extend to all assets without limit. We reject this narrow reading of Sec. 1405(c). That MPPAA does not specify the liability of individual joint venturers does not mean that their liability, if found to exist, must extend to all assets without limit.
 
 
 37
 Section 1301(b) provides that businesses under common control "shall be treated ... as a single employer." Although H.F. Johnson initially defaulted on its withdrawal liability, Lockwood is, for purposes of this lawsuit, a defaulting employer. Had H.F. Johnson failed to contribute to the Fund, Lockwood, Robert Mitchell's Estate and Richard Mitchell would have had a personal obligation to contribute to the Fund by virtue of Sec. 1301(b) and the common law of joint venturer liability. The exemption contained in Sec. 1405(c) applies to Robert Mitchell's Estate and Richard Mitchell.
 
 
 38
 The district court's central concern appears to have been that holding Richard Mitchell and Robert Mitchell's Estate liable as joint venturers in Lockwood would create an "end run" around protection afforded First Trust and Richard as shareholders in H.F. Johnson. However, the decision to forgo the benefits of incorporation and to establish Lockwood as a joint venture was presumptively made for business reasons and for the personal benefit of Richard and Robert. They (and their successors in interest) are responsible for whatever legal consequences attach to their own choice of business organization.
 
 
 39
 Robert Mitchell's Estate and Richard Mitchell are personally liable for Lockwood's obligation under Secs. 1301(b)(1), 1381, subject to the exemption provided by Sec. 1405(c).
 
 C. Survival of Cause of Action
 
 40
 First Trust contends that Secs. 1381 and 1451(f) do not apply to this case because MPPAA "does not expressly provide an independent cause of action against a decedent's estate." MPPAA neither authorizes nor precludes such actions. Whether MPPAA transcends death is a question of federal common law.
 
 
 41
 At early common law, creditors could not sue the estate of one who had a joint contractual obligation. Davis v. Van Buren, 72 N.Y. 587 (1878); McLaughlin v. Head, 86 Or. 361, 168 P. 614 (1917); 2 Williston on Contracts, Sec. 344. This rule has been abolished in most states. See, e.g., Mont. Code Ann. Sec. 27-1-501 ("An action, cause of action, or defense does not abate because of the death or disability of a party...."); J. Callamari, J. Perillo, The Law of Contracts at 745 (1977). Under ordinary principles of survival of actions, the Fund may pursue a decedent's estate just as it may pursue the living, provided that suit is brought within the appropriate period of limitations. See Trustees of Central Laborers' Pension Fund v. Tisler, 641 F.Supp. 389, 390-93 (C.D.Ill.1986) (action against decedent's estate for unpaid fringe benefits); Connors v. Calvert Development Co., 622 F.Supp. 877, 882 (D.D.C.1985).
 
 D. Preemption of Montana's Nonclaim Statute
 
 42
 The Montana Probate Code provides that claims arising before death against a decedent "are barred against the estate, the personal representative, and the heirs and devisees of the decedent unless presented ... within 4 months" after publication of notice to creditors. Mont.Code Ann. Sec. 72-3-803.[5] The Fund admits that its claim against Robert Mitchell's Estate is barred by Montana law unless the period for presentation of claims was tolled by Robert Mitchell's alleged fraud. The Fund contends, however, that ERISA preempts the Montana statute and that the claim against the Estate is not barred. We agree.
 
 
 43
 With limited exceptions not relevant to this discussion, ERISA "supersede[s] any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C. Sec. 1144(a). A law "relates to" an ERISA plan if it "has a connection with or reference to such a plan." Shaw v. Delta Air Lines, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). ERISA preemption is to be construed broadly, and is not limited to state laws designed specifically to affect employee benefit plans. Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, 107 S.Ct. 1549, 1552-53, 95 L.Ed.2d 39 (1987); Shaw, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). As the Court stated in Pilot Life, "The question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." 107 S.Ct. at 1552 (citations, quotation marks and brackets omitted).
 
 
 44
 That Congress expressly provided a period of limitations governing actions to collect withdrawal liability (29 U.S.C. Sec. 1451(f)) indicates that Congress considered the period of limitations applicable to such actions essential to enforcement of employer obligations under MPPAA. Montana Probate Code Sec. 72-3-803, as it applies to this case, adds a condition not contemplated by Congress to collection of withdrawal liability. Montana's non-claim statute plainly "relates to" the Fund, and is preempted under ERISA, 29 U.S.C. Sec. 1144(a). The Fund's suit against Robert Mitchell's Estate was timely.
 
 
 45
 Our conclusion is consistent with the general law concerning federal preemption of state statutes of limitation: "[I]t is well established that federal claims are subject to state statutes of limitations unless there is a federal statute of limitations or a conflict with federal policy." South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 106 S.Ct. 2039, 2044, 90 L.Ed.2d 490 (1986) (footnote omitted). "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946).[6]
 
 IV
 Conclusion
 
 46
 We are faced with the awkward task of developing a coherent body of federal common law around specific statutory provisions which were not designed with these circumstances in mind. The potentially disruptive effect of our decision on probate of decedents' estates--an area of special concern to states--can hardly be understated.[7] Our decision is the product of expansive statutory liability, sweeping preemption and a Congressional mandate for creation of federal common law. Disruptive or not, our interpretation of the Act and our formulation of federal common law follow clearly from the congressional dictates in ERISA.
 
 We hold as follows:
 
 47
 Imposition of liability on Lockwood for H.F. Johnson's default does not violate Due Process. Robert Mitchell and Richard Mitchell are liable, subject to section 1405(c) exemptions, as joint venturers in Lockwood for Lockwood's obligation to pay H.F. Johnson's withdrawal liability. Robert Mitchell's Estate is liable for Robert Mitchell's Lockwood's withdrawal liability. MPPAA preempts Montana Probate Code Sec. 72-3-803 insofar as Sec. 72-3-803 places a shorter period of limitations on actions to enforce withdrawal liability than 29 U.S.C. Sec. 1451(f). The judgment is reversed.
 
 
 48
 REVERSED.
 
 
 
 [1]
 The record contains several other judgments pertaining to other entities involved at the district court level, none of which pertain to Lockwood, First Trust, or Richard Mitchell
 
 
 [2]
 First Trust and Richard have a direct financial stake in the determination of whether Lockwood is liable for H.F. Johnson's withdrawal liability. Accordingly, First Trust and Richard have standing to litigate the constitutionality of Sec. 1301. See Fernandez v. Brock, 822 F.2d 865, 868-69 (9th Cir.1987); Morrison-Knudsen Co. v. CHG International, Inc., 811 F.2d 1209, 1214 (9th Cir.1987)
 
 
 [3]
 The First and Sixth Circuits have held that liability for termination of single-employer benefit plans (29 U.S.C. Sec. 1362) extends to entities under common control as defined by Sec. 1301(b). In Re Challenge Stamping and Porcelain Co., 719 F.2d 146 (6th Cir.1983); Pension Benefit Guaranty Corporation v. Ouimet, 630 F.2d 4, (1st Cir.1980) (Ouimet I ), cert. denied, 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981), appeal after remand, 711 F.2d 1085, cert. denied 464 U.S. 961, 104 S.Ct. 393, 78 L.Ed.2d 337 (1983). Several district courts have held businesses liable for a commonly-controlled business' withdrawal liability. See United Food & Commercial Workers Union v. Progressive Supermarkets, 644 F.Supp. 633 (D.N.J.1986); Connors v. Calvert Development Co., 622 F.Supp. 877 (D.D.C.1985); Pension Benefit Guaranty Corp. v. Center City Motors, Inc., 609 F.Supp. 409 (S.D.Cal.1984)
 
 
 [4]
 Indeed, the principal case relied on by the district court expressly reserved the possibility that shareholders and officers might be liable for a corporation's withdrawal liability under "traditional common law principles" of corporate veil-piercing. Connors v. P & M Coal Co., 801 F.2d 1373, 1378 (D.C.Cir.1986)
 
 
 [5]
 "Every claim which is disallowed ... by the personal representative is barred ... unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than 60 days after mailing of the notice of disallowance...." Mont.Code Ann. Sec. 72-3-805
 
 
 [6]
 See, e.g., 29 U.S.C. Sec. 160 (6 month period of limitations applies to unfair labor practice actions brought by National Labor Relations Board); Herget v. Central National Bank & Trust Co., 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945) (Bankruptcy Act period of limitations governs actions to set aside preferential transfers); Continental Enterprises, Inc. v. American Oil Co., 808 F.2d 24, 28 (8th Cir.1986) (period of limitations prescribed by 15 U.S.C. Sec. 2806(a) governs action for violation of the Petroleum Marketing Practices Act); Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir.1984) (Arbitration Act period of limitations (9 U.S.C. Sec. 12) governs actions to vacate arbitration award); United States v. Tilleraas, 709 F.2d 1088, 1090 (6th Cir.1983) (action pursuant to Higher Education Act to recover student loan governed by 28 U.S.C. Sec. 2416(c)); Basham v. Finance America Corp., 583 F.2d 918, 928 (7th Cir.1978) (federal statute of limitations, 15 U.S.C. Sec. 1640(e) governs action under Truth In Lending Act), cert. denied, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979); LaBelle v. Blue Cross & Blue Shield United of Wisconsin, 548 F.Supp. 251, (W.D.Wis.1982) (Federal Employees Health Benefits Act of 1959 period of limitations (5 U.S.C. Sec. 8902(m)(1)) governs postal worker's action for payment of insurance benefits); United States ex rel. Small Business Administration v. Kurtz, 525 F.Supp. 734, 739-41 (E.D.Pa.1981) (28 U.S.C. Sec. 2415 governs United States' action to recover on guaranty under Small Business Act), aff'd 688 F.2d 827 (3rd Cir.1982), cert. denied, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387
 
 
 [7]
 We need not decide whether liability extends to transferees of estates because the estate of Robert Mitchell has not yet been distributed, and is, in fact, insolvent. For the same reasons, we need not decide whether fiduciaries charged with settling estates may be liable for distribution of assets after the state non-claims period has run, but before the 6 year period for collection of withdrawal liability has elapsed