Ralph ROGERS, Plaintiff, Appellee

v.

Michael FAIR, Defendant, Appellant.

No. 89–1902.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1990.
Decided April 30, 1990.

---

**6.** Under § 5C1.1(e)(2) community confinement includes residence in a halfway house.

I.

Paula J. De Giacomo, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., were on brief, for defendant, appellant.

Donald A. Harwood, with whom Hrones and Harwood, were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an interlocutory appeal by various former officials of the Massachusetts prison system [1] from the partial denial of summary judgment and qualified immunity in a § 1983 suit brought by a state prisoner who alleges that he was denied a prison furlough because his furlough sponsors were Jewish. Because the prisoner has presented no evidence that statements allegedly made about the religious background of his sponsors influenced the furlough decision, we grant summary judgment for the defendant officials.

Ralph Rogers was convicted of first degree murder and sentenced to life in prison in 1966. While serving his sentence in the Massachusetts prison system, Rogers participated in the prison furlough program. Throughout the 1970s, Rogers successfully completed ten furloughs, most of which were sponsored by his family. He completed his last furlough on December 22, 1979. At issue in this case is the denial of a furlough for Rogers, scheduled for February 8, 1980, after preliminary approval by the Commissioner of the Department of Correction. In late January, 1980, defendant Vose, the deputy superintendent of the prison where Rogers was confined, told Rogers that a "hold" had been put on the furlough pending investigation by the Security Management Team into the transfer of $9,750 from Rogers to his furlough sponsors, the Ransenbergs.[2] At this time, Vose also allegedly asked Rogers why he was sending money to "Jews" who were not related to him and made other statements about the religious background of the Ransenbergs. Vose also informed Rogers that another reason for the furlough "hold" was that Rogers had recently been denied commutation (and thus any hope of parole or early release) and was therefore more of an escape risk.[3]

At the end of May, 1980, the investigation was concluded and a report issued that recommended that Rogers' furlough be reinstated. Defendants Vose and Ronald Amaral, upon review of the report, both recommended that furlough privileges be reinstated. At about the same time the report was completed, a first degree mur-

---

1. Rogers sued Michael V. Fair, individually and as Commissioner of Corrections for the Commonwealth of Massachusetts; Fred Butterworth, individually and as Deputy Commissioner of Corrections for areas I and III of the Commonwealth of Massachusetts; Ronald W. Amaral, individually and as Superintendent of the Southeastern Correctional Facility; and George Vose, individually and as Deputy Superintendent of the Southeastern Correctional Center. *See* Second Amended Complaint.

2. There was nothing improper about the transfers themselves. In fact, each incremental transfer had been approved by the prison authorities. Rather, the concern was that by having such a large amount available outside of the prison, Rogers might be able to finance an escape while on furlough. Moreover, it was thought that this large amount of money placed the reliability of the Ransenbergs in question.

3. Our review of the record indicates that such a belief was correct because Rogers apparently escaped and was recaptured in 1986.

der convict escaped while on furlough. That escape, and the ensuing bad publicity, forced the prison system to re-evaluate the furlough program. The re-evaluation resulted in closer scrutiny of furlough applications from first degree murderers. Part of this additional scrutiny was the creation of a special independent panel (Murder I Review Panel) to review furlough applications from first degree murder prisoners. Rogers' furlough application was reviewed by this panel. It recommended that the Commissioner of Corrections (Hogan) deny Rogers' furlough application for a number of reasons including: the serious nature of the offense underlying his conviction (the brutal murder of a woman tinged with sexual overtones); Rogers' alcohol problems (10 alcohol related disciplinary reports in prison); the suitability of the furlough sponsor (including the money transfers and the fact that Mrs. Ransenberg kept a gun under her bed); and the denial of commutation. The Commissioner denied the application based on the panel's recommendation and reasoning.

Rogers brought this action under 42 U.S.C. § 1983 and § 1985 alleging that he was denied the February, 1980 furlough arbitrarily in violation of the due process and equal protection clauses of the Constitution and for the discriminatory reason that his sponsors were Jewish.

The defendants, all participants in the review of Rogers' furlough application,[4] brought a motion for summary judgment and a motion for qualified immunity. The district court granted the motion on all issues except whether Rogers was denied furlough because his sponsors were Jewish. The defendants bring this appeal claiming that they are immune from the remaining allegation because they are state officials[5] and that summary judgment should have been granted.

4. The defendants urge us to find that the decision on a furlough application is only made by the Commissioner of Prisons. We feel that it is unnecessary to do so.

5. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)

## II.

In the posture that this case is before us, the scope of the appeal is very narrow. Appellants ask us to reverse the denial of summary judgment because there is no evidence that their conduct could have violated the rights of the plaintiff even if those rights were clearly established. *Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir.1988). The only question, therefore, is whether the plaintiff has presented sufficient facts to survive summary judgment on the issue of whether the religion of the sponsors was improperly considered in the denial of furlough. Because plaintiff, the nonmoving party, has failed to meet normal summary judgment standards, we reverse and grant summary judgment to the defendants.

Generally, we do not have jurisdiction to hear an appeal from a denial of a motion for summary judgment because the denials are not final judgments. In the context of § 1983 suits, we have made an exception when the defense of qualified immunity (an interlocutory appeal that we must entertain) is combined with the motion for summary judgment.

> We have jurisdiction to review a district court's denial of qualified immunity on grounds that a genuine issue of material fact exists as to the factual predicate of a qualified immunity claim. In such a review, we must examine the discovered facts regarding defendants' conduct relevant to the immunity claim and, applying normal summary judgment principles, determine whether a genuine issue does or does not exist concerning qualified immunity.

*Unwin*, 863 F.2d at 132; *See also, Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir. 1989); *Yerardi's Moody Street Restaurant v. Board of Selectman*, 878 F.2d 16, 17 (1st Cir.1989). In such a situation, the court examines, as we have here, the entire

("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

record developed on summary judgment. *Rodriguez,* 888 F.2d at 901.

■ A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Having done so, the burden shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the opponent. *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue." *Brennan,* 888 F.2d at 191; *see also* Fed.R.Civ.P. 56(c). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2510–2511. In such a review, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Yerardi's,* 878 F.2d at 17 (*quoting Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513); *see also Shinberg v. Bruk,* 875 F.2d 973, 974 (1st Cir.1989) ("we are mindful of our duty to review the record in the light most favorable to the party opposing the motion for summary judgment").

■ In this case, the only issue is whether, assuming that furlough cannot be denied for a discriminatory reason, Rogers has created a genuine issue of material fact that his furlough was denied because his sponsors were Jewish.[6] To prevent summary judgment, Rogers must present more than mere allegations. He has not done so. Rogers has presented no facts that indicate that even if Vose's alleged statements about "Jews" were made (a contested issue of fact), the statements or Vose's feelings in any way affected the furlough application (i.e., that they were "material").

We have scoured the record on summary judgment and find no facts that Rogers can use to support his allegations. It is undisputed that Vose, despite any statements he may have made, formally supported furlough applications at least twice after having made the alleged statements. There is no evidence that the ethnic or religious background of the sponsors was considered by the Murder I Review Panel or played any part in the final decision. In fact, there is specific evidence to the contrary. The affidavit of Hogan (Commissioner of Corrections at the time) and interrogatories of Butterworth (a member of the Murder I Review Panel) both state uncategorically that the religious or ethnic background of the sponsors was never considered or discussed. In addition, it is apparently undisputed that Hogan, who made the actual decision, never considered, knew, or discussed the religious or ethnic background of the sponsors.

Defendants have articulated more than sufficient reasons for denying a furlough. There is no evidence they had any reason at all to believe that their conduct violated the established rights of the plaintiff. *See Unwin v. Campbell,* 863 F.2d at 133, n. 9. Rogers has failed to come up with any genuine issue of material fact to support his extremely conjectural arguments about an alleged conspiracy.

For these reasons, we reverse the denial of summary judgment and remand with directions to the district court to enter summary judgment for defendants.

*So ordered.*

---

6. The issue here is not, as Rogers urges, whether the Commissioner's decision was reasonable or arbitrary.