**Charles LANGONE, Fund Manager of the New England Teamsters and Trucking Industry Pension Fund, Plaintiff,**

v.

**Anthony W. ESERNIA, Defendant.**

**Civ. A. No. 92–12105–PBS.**

United States District Court, D. Massachusetts.

March 30, 1994.

Randall E. Nash, Grady & Dwyer, Boston, MA, for plaintiff.

Henry A. Sullivan, Leonora L. Batson, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, for defendant.

*MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT*

SARIS, District Judge.

### Introduction

This is an action for the collection of withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381 *et seq.* ("MPPAA") which amended the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

In a prior action by the Fund Manager [1] of the New England Teamsters and Trucking Industry Pension Fund ("The Pension Fund") against the Connecticut Fast Freight Corporation ("CFF"), the Pension Fund obtained a judgment against CFF in the amount of $547,261 for withdrawal liability, liquidated damages, interest, and attorneys'

---

1. In the first suit, the Fund Manager of the Pension Fund was Helen DeBrecini.

fees and costs. The Pension Fund, unable to collect the judgment from CFF, subsequently brought this action seeking to collect instead from the defendant, Anthony W. Esernia ("Esernia"). The Pension Fund contends that Esernia, as the sole proprietor of a business under common control with CFF, is jointly and severally liable for the withdrawal liability. *See* 29 U.S.C. §§ 1301(b)(1), 1381(a) (1988). Count I seeks to collect on the prior judgment against CFF, and Count II is a direct action to collect CFF's unpaid outstanding withdrawal liability. There is no claim against Esernia based on an allegation that CFF's corporate veil should be pierced.

The defendant argues that this action is barred by the six-year statute of limitations established in 29 U.S.C. § 1451(f) (1988).[2] The parties have each filed motions for summary judgment. For the reasons set forth below, the defendant's motion is *ALLOWED* and the plaintiff's motion is *DENIED.*

### BACKGROUND

A review of the summary judgment record discloses the following undisputed material facts. The Acorn Leasing Company ("Acorn Leasing") and CFF are "under common control." *See* 29 U.S.C. § 1301(b)(1). Acorn Leasing was formed in approximately 1974, and Esernia became the sole proprietor in 1978. Acorn Leasing has no employees; it simply holds the freight terminal in Meriden, Connecticut, for lease. From 1974 to 1982, this terminal was leased to CFF, which paid rent.

CFF was a motor freight company incorporated under the laws of the State of Connecticut from 1957 until it was dissolved in 1990. From 1970 through 1990, Esernia was the President and sole shareholder of CFF. CFF employed about 20 people from 1973 to 1982, 12 of whom were members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Teamsters"). Pursuant to a series of collective bargaining agreements, CFF contributed to the Pension Fund from 1973 to 1983.

Sometime in early 1983, the Pension Fund determined that CFF had effected a withdrawal from the Fund on or about January 22, 1983. On August 12, 1983, the Pension Fund notified CFF by letter that its withdrawal liability under the MPPAA was $218,145. CFF did not make the first monthly installment, due on October 15, 1983. On October 26, 1983, the Pension Fund notified CFF that due to its failure to make the first scheduled payment, the Trustees of the Fund would declare a Default of Payment against CFF if the failure to pay was not cured by December 26, 1983. CFF never made any payments toward the assessed withdrawal liability.

On June 21, 1989, the plaintiff brought suit against CFF for the withdrawal liability of $218,145 plus liquidated damages, interest, and attorneys' fees and costs (The "CFF Case"). The Pension Fund filed a motion for summary judgment that was unopposed by CFF. On April 29, 1991, the court entered judgment in favor of the Pension Fund in the amount of $547,261. Between the time the suit was filed in 1989 and judgment entered in 1991, CFF was dissolved as a corporation. On August 27, 1992, Plaintiff filed the instant action.

### DISCUSSION

A motion for summary judgment must be granted if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find

---

**2.** The defendant also argues that the present action is barred by the equitable doctrine of laches. As this court now enters summary judgment for the defendant on statute of limitations grounds, the alternative laches argument is not discussed in this opinion.

for the [nonmoving party]." *Id.* (citations omitted). The nonmovant cannot simply rest upon mere allegations. *Id.* Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue. *Id.* "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

▮ Under the MPPAA, when an employer withdraws from a multiemployer pension plan, the pension fund has broad authority to assess the employer's "withdrawal liability," a sum that represents a portion of the plan's "unfunded vested benefits." 29 U.S.C. § 1381, 1399. "Section 1301(b)(i) of ERISA provides that trades and businesses operated under common control are considered a single entity and thus are jointly and severally liable for each other's withdrawal liability." *Board of Trustees of the W. Conference of Teamsters Pension Trust Fund v. Lafrenz,* 837 F.2d 892, 893 (9th Cir.1988) (where individual defendants own 95% of employer corporation, as well as an unincorporated truck-leasing operation, the individuals as sole owners of the unincorporated operation were liable for the employer's withdrawal liability under § 1301(b)); *see also Board of Trustees of the W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir.1987). *Cf. IUE AFL–CIO Pension Fund v. Barker & Williamson Inc.,* 788 F.2d 118, 123 (3rd Cir.1986) ("ERISA incorporates the Internal Revenue Code's 'controlled group' standards for determining whether two related corporations are within a controlled group and therefore deemed to be a single employer.").

Plaintiff alleges that because Esernia is the sole proprietor of Acorn Leasing and the sole shareholder of CFF, the two businesses are under common control. For purposes of his motion only, Esernia has conceded this point. *See generally* Goldowitz & Gigot, *The Controlled Group Rule for Purposes of the Withdrawal Liability Provisions of the Employee Retirement Income Security Act,* 90 W.Va.L.Rev. 773 (1988).

If the employer fails to make the scheduled payments toward its withdrawal liability, the MPPAA establishes procedures by which the pension fund may bring suit to compel payment. 29 U.S.C. § 1451. Under 29 U.S.C. § 1451(a)(1), "A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan ... may bring an action for appropriate legal or equitable relief, or both." Pursuant to 29 U.S.C. § 1451(f),

> [a]n action under this section may not be brought after the later of (1) 6 years after the date on which the cause of action arose, or (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

For purposes of determining when the statute of limitations starts running under § 1451(f)(1), the courts have held that a cause of action for unpaid withdrawal liability accrues on the date when the employer's debt to the pension plan becomes overdue, "rather than when they discovered the identity of persons who might be required to satisfy those debts." *Central States, S.E. & S.W. Areas Pension Fund v. Navco,* 3 F.3d 167, 170–71 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994); *Joyce v. Clyde Sandoz Masonry,* 871 F.2d 1119, 1124 (D.C.Cir.), *cert. denied,* 493 U.S. 918, 110 S.Ct. 280, 107 L.Ed.2d 260 (1989).[3]

▮ With these principles in mind, this court now turns to the central issue on these cross-motions for summary judgment:

---

**3.** The plaintiff makes no allegation of fraud or concealment. Indeed, the undisputed evidence is that in the early 1970's the Teamsters were well aware that Esernia was the president of CFF as well as the owner of Acorn Leasing, which was the landlord of the terminal to which CFF moved its operations in 1974.

whether the Pension Fund's suit against Esernia is barred by the six-year statute of limitations in 29 U.S.C. § 1451(f)(1). A review of the pertinent dates appears, at first glance, to provide a simple answer. The plaintiff's cause of action against CFF accrued, at the latest, on December 26, 1983, when CFF failed to cure its failure to make the first required payment. The suit against CFF was filed on June 21, 1989—within the six-year statute of limitations. The suit against Esernia was filed on August 27, 1992—almost nine years after CFF failed to make the first required payment. The defendant contends this is a straightforward case: this action is barred because the plaintiff's cause of action against Esernia accrued, as it did against CFF, in December of 1983.

■ Summary judgment in favor of the defendant is warranted on Count II. Absent fraud or concealment, a direct suit for withdrawal liability against a company under common control must be brought within six years of the time that payment becomes overdue. *See* 29 U.S.C. § 1451(f); *Navco*, 3 F.3d at 171–72 (claim against company under common control accrues not when pension fund recognizes that it has not been paid, or that another party might be liable, but "accrues as soon as payment becomes overdue."). This conclusion follows logically from the statutory language: since all businesses under common control are treated as a single employer, the cause of action against each of these businesses accrues simultaneously. *See* 29 U.S.C. § 1301(b)(1). Moreover, because the Pension Fund relies on the common control provisions of the MPPAA in its attempt to hold Esernia liable, it is appropriate that it be held to the six-year statute of limitations established by the MPPAA for actions brought "under this section." 29 U.S.C. § 1451(f). This is not a harsh conclusion; Congress was generous in providing six years "to ascertain the existence of a claim and track down persons liable under the Employee Retirement Income Security Act, a complex statute." *Navco*, 3 F.3d at 171.

Recognizing, as it must, that a direct action against a control group member must be filed within six years of the employer's default, the plaintiff insists instead that Count I

is governed by a different statute of limitations because it is a suit to collect on a judgment. They argue that the present suit against Esernia presents a "compelling" analogy to an action to pierce the corporate veil. *See generally Alman v. Danin*, 801 F.2d 1, 3–4 (1st Cir.1986) (ERISA permits the court to disregard the corporate form to impose liability on shareholders in certain circumstances). Plaintiff argues that once judgment enters against a corporation, a subsequent action to recover on that judgment by piercing the corporate veil and collecting from the controlling individuals is subject to a new 20–year statute of limitations. *See* Mass.Gen.L. ch. 260, § 20 (1992) ("A judgment or decree of a court of record of the United States or of any court thereof shall be presumed to be paid and satisfied at the expiration of twenty years after it was rendered."); *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 608 F.Supp. 1261, 1264 (S.D.N.Y.1985) ("*Passalacqua*"), *rev'd on other grounds*, 933 F.2d 131 (2nd Cir.1991). *But see Navco*, 3 F.3d at 171 ("Plenty of cases reject contentions that particular claims do not accrue until the victim finds out who can be obliged to pay."). Under plaintiff's theory, this suit against Esernia was filed with eighteen years to spare.

The weakness in the plaintiff's argument is that an action against a second business under common control with the withdrawing employer is not an action to pierce the corporate veil. The plaintiff acknowledges the nature of this suit in his brief, explaining that Count I "is predicated on the fact that Esernia is the sole proprietor of a trade or business under common control with CFF and, thus, a 'single employer' with CFF," and conceding it is not aware of evidence that would support a common law veil piercing claim. *Compare Lafrenz*, 837 F.2d at 895 (the defendants' "liability for the withdrawal liability of [the withdrawing employer] does not derive from their status as shareholders of [the withdrawing employer]. Rather they are liable because of their status as the sole proprietors of an unincorporated trade or business under their common control."). Businesses deemed to be a single employer with the withdrawing employer are already jointly and severally liable by virtue of their

relationship to one another. *See* 29 U.S.C. § 1301(b)(1); *Lafrenz,* 837 F.2d at 893.

Even if Esernia were being sued in his capacity as the sole shareholder of CFF, plaintiff has adduced no admissible evidence from which this court could determine that there is a triable issue to support a claim of piercing.[4] *Compare DeBrecini v. Graf Bros. Leasing, Inc.,* 828 F.2d 877, 878–79 (1st Cir. 1987) (in withdrawal liability context, corporate shareholders or officers may be held individually liable if the circumstances warrant piercing the corporate veil), *cert. denied,* 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988); *Alman,* 801 F.2d at 2–4 (court pierces veil of employer that was delinquent in making its contributions, holding sole shareholders and officers personally liable for the company's obligations).

Plaintiff's reliance on *Passalacqua* is misplaced. There the Court distinguished between the statutes of limitations governing an action to pierce the corporate veil and an action against corporate shareholders predicated on a state statute which created a right to sue the shareholders for any balance remaining after the property of the corporation was levied upon. It held: "The [statutory] cause of action was established against the shareholders as shareholders and not as the alter ego or instrumentality of the corporation. *This is a significant difference.* Under the alter ego and instrumentality theories the corporation and those who have controlled the corporation are treated as but one entity." *Passalacqua,* 608 F.Supp. at 1264 (emphasis added). Accordingly, if its suit had been timely, the plaintiff could have directly recovered from Esernia, in his capacity as sole proprietor of Acorn Leasing, without ever having to "pierce" CFF.

■ Finally, it is necessary to address the plaintiff's reliance on the principle that notice to one member of a controlled group constitutes notice to all members of the group. *See Central States Pension Fund v. Slotky,* 956 F.2d 1369, 1375 (7th Cir.1992). The significance of this principle, pursuant to 29 U.S.C. § 1401(a)(1), is that businesses under common control must file for arbitration within the same 60–day time frame as the withdrawing employer if they wish to contest the assessment of withdrawal liability, even though they have not directly received notice of that assessment. *Id.* at 1372–73. While it is true that Esernia had notice of the assessed withdrawal liability and of the suit against CFF, this does not excuse the Pension Fund from suing him within the 6–year statute of limitations.

### ORDER

For the foregoing reasons, it is hereby *ORDERED* that the defendant's motion for summary judgment be *ALLOWED* and the plaintiff's motion for summary judgment be *DENIED.*

---

4. The plaintiff contends that Esernia has resisted the production of documents which could shed light on the feasibility of a veil-piercing claim against Esernia. However, plaintiff has not moved for a continuance pursuant to Rule 56(f). In any event, it appears unlikely that plaintiff could "articulate a plausible basis for its belief that the requested discovery would raise a trial-worthy issue." *Bird v. Centennial Ins. Co.,* 11 F.3d 228, 235 (1st Cir.1993).