**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA PENSION PLAN,<br><br>             Plaintiff-Appellee,<br><br>v.<br><br>KEVIN LIEBECK, as Executor of the Estate of Denny R. Steelman,<br><br>             Defendant-Appellant. | No.   17-56188<br><br>DC No. CV 15-0553 JVS<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted April 11, 2019
Pasadena, California

Before:    TASHIMA and PAEZ, Circuit Judges, and ALSUP,** District Judge.

Defendant-Appellant Kevin Liebeck ("Liebeck"), the executor of the estate

of Denny R. Steelman ("Steelman"), appeals both the district court's denial of

---

    *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    **     The Honorable William H. Alsup, United States District Judge for the Northern District of California, sitting by designation.

Steelman's motion to stay and the district court's subsequent grant of summary judgment in favor of Plaintiff-Appellee Trustees of the Southern California IBEW-NECA Pension Plan ("Trustees"). As to the motion to stay, Liebeck argues that the district court erred by allowing this lawsuit against Steelman to proceed before Action Electric, Inc.'s ("Action") withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA") had been determined in Action's bankruptcy proceeding, because the automatic bankruptcy stay unfairly precluded Steelman from challenging the assessed withdrawal liability through the arbitration procedures set forth in 29 U.S.C. § 1401. Liebeck also challenges the district court's summary judgment ruling that Steelman was personally liable for the withdrawal liability as a result of his common control of a trade or business that leased property to Action.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and "[w]e review de novo the scope or applicability of the automatic stay under the Bankruptcy Code, 11 U.S.C. § 362, because it is a question of law." *Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc.* (*In re Palmdale Hills Prop., LLC*), 654 F.3d 868, 875 (9th Cir. 2011) (citing *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc.* (*In re Pettit*), 217 F.3d 1072, 1077 (9th Cir. 2000)). We also review de novo a

grant of summary judgment. *See Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012). We affirm in part, reverse in part, and remand.

**1.** The district court did not err in allowing Trustees to proceed with their suit against Steelman despite the automatic stay arising from Action's bankruptcy proceeding. Even if the bankruptcy stay could have applied to Steelman,[1] we have suggested that the non-debtor invoking the applicability of the stay must raise the issue with the bankruptcy court, so that the bankruptcy court can extend the stay to

---

[1] Given that the structure and text of ERISA suggest that there is a single withdrawal liability for which all commonly controlled trades and businesses that together make up "the employer" are jointly and severally liable, Liebeck makes a valid argument that any attempt by Steelman to arbitrate Action's withdrawal liability would have involved Action's interests and affected the bankruptcy estate. *See* 29 U.S.C. §§ 1301(b)(1), 1381(a); *see also Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988). As a result, arbitration between Steelman and Trustees to determine whether Action had actually incurred the assessed withdrawal liability may well have fallen within the unusual circumstances exception to the general rule that an automatic bankruptcy stay applies only to the bankrupt debtor. *See United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 & n.3 (9th Cir. 1993) (noting that an automatic stay may apply to non-bankrupt co-defendants of a debtor where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor" (internal quotation marks and citation omitted)); *see also Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009) ("[I]f the liability of the non-debtor party *were* to affect the property of the bankruptcy estate, such as by a requirement that the debtor indemnify the non-debtor . . . it may be necessary for the plaintiff in such a case to proceed against the non-debtor party through bankruptcy proceedings." (citations omitted)).

3

the non-debtor, if appropriate.  *See Boucher v. Shaw*, 572 F.3d 1087, 1093 n.3 (9th Cir. 2009); *see also J & J Sports Prods., Inc. v. Brar*, No. 2:09-CV-3394-GEB-EFB, 2012 WL 4755037, at \*1 (E.D. Cal. Oct. 3, 2012).  Steelman failed to prospectively raise the issue in the bankruptcy court before the arbitration period expired.  He thereby deprived the bankruptcy court of the opportunity to determine whether the bankruptcy stay applied, and if so, whether it should nonetheless be partially lifted to allow arbitration of Action's withdrawal liability.  *See* 11 U.S.C. §§ 105(a), 362(d)(1); 28 U.S.C. § 1334(b).  Accordingly, Steelman waived the argument that the automatic stay had unfairly precluded him from arbitrating whether Action fell within 29 U.S.C. § 1383(b)'s construction industry exemption from withdrawal liability.  We therefore affirm the district court's denial of the motion to stay or dismiss.

2.      The district court's summary judgment ruling did not rely on the improper resolution of a disputed issue of fact about ownership of the Washington Property at the time of Action's withdrawal.  The district court explicitly adverted to Liebeck's evidence that title to the Washington Property had been transferred to the Bypass Trust in 2010.  The district court then performed its analysis assuming Liebeck's version of this disputed fact, ultimately concluding that Steelman was

4

personally liable even if the Bypass Trust owned the Property after Christine Steelman's death in 2010.

3.      While the district court correctly determined on summary judgment that the leasing operation was a "trade or business," the district court failed to apply the correct standard when determining whether that trade or business was under "common control" with Action. *See* 29 U.S.C. § 1301(b)(1); *Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988). Pursuant to § 1301(b)(1), federal Treasury regulations provide the governing standard for common control. *See* 29 U.S.C. § 1301(b)(1); 26 C.F.R. § 1.414(c)–2. Under these regulations, the test for determining "control" is whether Steelman owned a controlling interest – an actuarial interest of at least eighty percent – of the Bypass Trust. *See* 26 C.F.R. § 1.414(c)–2(b)(2)(i)(B), (c); *see also Lafrenz*, 837 F.2d at 893–94. The district court did not address this standard and, although Steelman was entitled to net income and a limited amount of principal from the Bypass Trust, there is no evidence in the record about whether Steelman's right to income and limited principal constitutes an "actuarial interest" under 26 C.F.R. § 1.414(c)–2(b)(2)(ii), and, if so, how large a share of the trust that actuarial interest was. Accordingly, Trustees have not carried their burden to show that

5

Steelman "controlled" the Bypass Trust as defined by the Treasury regulations; therefore, we reverse the district court's grant of summary judgment to Trustees.[2]

**4.** In addition, even if Steelman did "control" the Bypass Trust, the district court erred in concluding that such control would make Steelman personally liable for the withdrawal liability. ERISA's single-employer provision makes jointly and severally liable those trades and businesses that *are* commonly

---

[2] The district court also erred to the extent that it held that even if Steelman no longer controlled the leasing operation after 2010, he could still be personally liable for having previously controlled the leasing operation. The district court stated that it "agree[d] with the Plan that Steelman would remain liable even if his trade or business ceased with the Bypass Trust," and then cited several cases that "held that the termination of a lease before withdrawal does not preclude withdrawal liability." However, the cases that the district court cited do not support its holding; the cited cases deal with commonly controlled entities that ceased their leasing operations shortly before withdrawal, but not entities that ceased being subject to common control years before withdrawal.

Here, the district court expressly noted that the transfer of the Washington Property to the Bypass Trust occurred in the ordinary course of estate planning after the death of Christine Steelman, and no party has asserted that the transfer was fraudulent or made in an attempt to shield Steelman from withdrawal liability. Under these circumstances, we decline to hold that a trade or business that was under common control with the withdrawing employer three years before withdrawal, but which thereafter changed ownership and ceased being under common control, could still be held jointly and severally liable for withdrawal liability incurred three years later. *See* 29 U.S.C. § 1301 (referring to trades and business that "*are* under common control" (emphasis added)); *cf. Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 121 (4th Cir. 1991) ("As long as Centra was a control group member with M & D *when M & D withdrew from the Pension Fund*, Centra is jointly and severally liable on the withdrawal obligation." (emphasis added)).

controlled, but not necessarily the entity or person that is *doing* the controlling. *See* 29 U.S.C. § 1301(b)(1); *Lafrenz*, 837 F.2d at 893. Where courts have held owners of certain commonly controlled trades and businesses personally liable for withdrawal liability, they have done so not because ERISA imposes liability directly on the controlling person, but rather because the legal character of the commonly controlled entity makes its owners liable for the entity's obligations, as with a sole proprietorship. *See, e.g.*, *Lafrenz*, 837 F.2d at 895 ("[W]e conclude that the Lafrenzes are personally liable for Pre-Mix's withdrawal liability, not because they are the controlling shareholders in Pre-Mix, but because they are personally liable for the withdrawal liability imputed to their unincorporated truck-leasing operation."); *Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1014–15 (9th Cir. 1987) (holding joint venturers personally liable for withdrawal liability because joint ventures are normally treated as a type of partnership, and, in contrast to shareholders and officers of a corporation, "partners are personally liable for obligations of the partnership").

California law supports Liebeck's contention that the Bypass Trust was a separate legal entity from Steelman. *See* Cal. Prob. Code § 18200; *Laycock v. Hammer*, 44 Cal. Rptr. 3d 921, 925–26 (Ct. App. 2006). Trustees do not dispute

this, and cite no authority suggesting that a settlor can nevertheless be held personally liable for the obligations of an irrevocable trust.[3] As a result, even if Steelman is found to be the controller of the Bypass Trust, Trustees have not established as a matter of law that such a finding would entitle them to summary judgment against Steelman in his personal capacity.[4] Rather, under ERISA, the Bypass Trust, not Steelman, would be jointly and severally liable for Action's withdrawal liability, and thus Trustees would need to seek recovery from the Bypass Trust itself. *See* 29 U.S.C. § 1301(b)(1). The district court therefore committed legal error in ruling otherwise and holding Steelman personally liable, and that ruling must be reversed.

•　●　•

---

[3]　　Nor can someone be personally liable for an irrevocable trust's liabilities simply because they serve as the trustee, as Steelman did here. *See* Cal. Prob. Code § 18001; *Galdjie v. Darwish*, 7 Cal. Rptr. 3d 178, 190–92 (Ct. App. 2003), *as modified on denial of reh'g* (Dec. 23, 2003).

[4]　　*Vaughn v. Sexton*, cited by Trustees, does not alter this conclusion, because in that case the defendant was held personally liable for a trust's withdrawal liability only because he was the alter ego of the trust. *See Vaughn v. Sexton*, 975 F.2d 498, 504 (8th Cir. 1992) ("[T]he defendants described the trust as an alter ego of Mr. Sexton. The effect of this concession, in our view, is that Mr. Sexton may be held personally liable for the obligations of the trust."). Here, Trustees have not alleged that Steelman is the alter ego of the Bypass Trust.

8

On remand, the district court may consider entertaining a renewed motion for summary judgment so that it can analyze, under the standard set forth in the Treasury regulations, whether Steelman controlled the Bypass Trust. However, because such control would make the Bypass Trust rather than Steelman himself liable, and because the Bypass Trust is not a defendant in this lawsuit, the district court need only consider a renewed motion if the Trustees can properly raise another legal theory under which Steelman himself can be held personally liable for the obligations of the Bypass Trust. Otherwise, only the factual dispute about whether Steelman or the Bypass Trust owned the Washington Property after Christine Steelman's death in 2010 remains to be resolved at trial.

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.**

Each party shall bear its own costs on appeal.