**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**4,945 SQUARE FEET OF LAND MORE OR LESS SITUATED IN THE COUNTY OF BRISTOL, COMMONWEALTH OF MASSACHUSETTS; DBT Corp., as Trustee of Alin Realty Trust; Robert H. Guilbeault; Donna Guilbeault; City of** **Attleboro; and 12,369 Square Feet of Land More or Less Situated in the County of Bristol, Commonwealth of Massachusetts; DBT Corp., as Trustee of Alin Realty Trust; Robert H. Guilbeault; Donna Guilbeault; City of Attleboro; and Unknown Others, Defendants.**

No. Civ.A. 96–12206–PBS.

United States District Court,
D. Massachusetts.

March 31, 1998.

Eric W. Wodlinger, Michael H. Bunis, Choate, Hall & Stewart, Boston, MA, for National Railroad Passenger Corporation, plaintiff.

Jerry B. Plumb, Jr., Riemer & Braunstein, Boston, MA, for DBT Corp., defendant.

Michael J. Conley, Wakefield, MA, for Robert H. Guilbeault, defendant.

Michael J. Conley, Wakefield, MA, for Donna H. Guilbeault, defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Plaintiff National Railroad Passenger Corporation ("Amtrak") has filed a complaint to condemn and take by eminent domain property located in Attleboro, Massachusetts for the construction of an electrical power facility as part of the Northeast Corridor Improvement Project. This property[1] is currently owned by defendant DBT Corporation ("DBT") and occupied by defendants Robert H. Guilbeault and Donna Guilbeault ("Guilbeaults"). Plaintiff Amtrak moves for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the ground that Amtrak properly condemned the property by following the procedures set forth in 49 U.S.C. § 24311. After hearing, the Court *ALLOWS* plaintiff's motion for summary judgment and orders that Amtrak be given immediate possession of the property.

### BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, the Court treats the following material facts as undisputed. *See Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

In 1983, the Guilbeaults purchased 7.1 acres of land located in Attleboro, Massachusetts, including the property which is in dispute here. They have improved the land by constructing an industrial building for their welding business, and have plans to subdivide the land so that part can be used for residential house lots. The also have plans to construct an industrial building where Amtrak is attempting to impose an easement. On May 26, 1994, Shawmut Bank, N.A. foreclosed on the Guilbeaults' property, and DBT Corporation, as Trustee of Alin Realty Trust, purchased the land at a foreclosure auction.

On June 22, 1994 the Guilbeaults commenced proceedings in Bristol County Superior Court seeking to have the auction invalidated for procedural defects and to set aside the foreclosure sale. The Superior Court entered judgment for Shawmut Bank and held the foreclosure valid. The Guilbeaults have appealed the judgment, and the appeal is still pending in the Massachusetts Appeals Court. They claim that the foreclosure deed is void as a result of the mortgagee's failure to give proper notice pursuant to Mass.G.L. ch. 244, § 14. The Superior Court endorsed a lis pendens relative to the land in their favor.

The Guilbeaults, however, remain in possession of the foreclosed land pursuant to an agreement with DBT allowing the Guilbeaults to occupy and use the land for $800 a month. This agreement, by its terms, is

---

1. Actually, Amtrak has brought this action against two defendant properties: 4,945 square feet of land more or less ("the fee property") and 12,369 square feet of land more or less ("the easement property"). I will refer to them collectively as "the property."

effective while the appeal is pending. Apparently, the parties are also engaged in settlement discussions.

Amtrak is in the process of upgrading its railroad between New Haven, Connecticut and Boston, Massachusetts. The major focus of this project is to electrify the rail line and improve the tracks and signal system. In February of 1993, Amtrak attempted to acquire the property through good faith negotiations with the Guilbeaults. Such efforts proved fruitless.

John Popoff is the project director for the North End Electric Project under which Amtrak is electrifying the Northeast Corridor rail line from New Haven, Connecticut to Boston, Massachusetts. He is an electrical engineer with fifteen years experience in the design and construction of electric railways. The electrical power needs for Amtrak's New Haven to Boston electrification necessitate twenty five traction power facilities, including the Attleboro Station. Amtrak wants to place on Guilbeaults' site an electrical tower which will aid in the electrification of rail service in the Northeast Corridor. Partly because adjacency to an industrial use is preferable, Popoff concluded: "Within the limits imposed on the location of the Attleboro Paralleling station by electrical requirements, this location was determined to be the best." (Docket No. 52, ¶ 5).

On November 1, 1996, pursuant to 49 U.S.C. § 24311, Amtrak filed a Declaration of Taking, a complaint in condemnation, a notice of taking, a notice of pendency, and a motion to make deposit of funds in court. It engaged a licensed real estate appraiser who determined that the fair market value of the property was $15,200. The owner, DBT, has stipulated that the figure represents fair market value and just compensation for the property. (Docket 19). The Guilbeaults object to the figure.

## DISCUSSION

### 1. Summary Judgment Standard

A motion for summary judgment must be allowed if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d 760, 762 (1st Cir.1994) (citing cases). A factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 2. Taking

Congress created Amtrak, a private, for-profit corporation, to "provide modern and efficient intercity and commuter rail passenger service." *National Railroad Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 410, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992). As part of the Northeast Corridor Improvement Program, it authorized Amtrak "to acquire, by condemnation or otherwise, any interest in real property that Amtrak considers necessary to carry out the goals" of the statute. *See* 49 U.S.C. § 24904(a)(2). One of these statutory goals is to improve facilities so that they are "compatible with improved high-speed transportation provided on the Northeast Corridor main line." 49 U.S.C. § 24902(a)(2).

The procedures for acquiring interests in privately owned property by eminent domain are set forth in 49 U.S.C. § 24311. Under 49 U.S.C. § 24311(a)(1), "Amtrak may acquire by eminent domain ... interests in property (A) necessary for intercity passenger rail transportation, except property of a rail car-

rier, a state, a political subdivision of a state, or a governmental authority." The eminent domain power can be exercised only if Amtrak cannot "acquire the interest in the property by contract" or "agree with the owner on the purchase price for the interest." 49 U.S.C. § 24311(a)(2).

If negotiations fail, Amtrak may file a civil action in federal court to acquire an interest in the property by eminent domain. Section 24311(b) provides:

> An interest is condemned and taken by Amtrak for its use when a declaration of taking is filed under this subsection and an amount of money estimated in the declaration to be just compensation for the interest is deposited in the Court.

Once Amtrak has filed the declaration and deposited the funds, title in fee simple vests in Amtrak, and the "right to the money vests in the person entitled to the money." 49 U.S.C. § 24311(b)(2). Challenges may be made to the amount later in a just compensation hearing. *See* 49 U.S.C. § 24311(b)(3).

The crux of this dispute is the Guilbeaults' contention that the property Amtrak has condemned by following the statutory procedures is not "necessary for intercity rail passenger transportation." 49 U.S.C. § 24311(a)(1). The threshold question is the interpretation of the word "necessary". In construing the term "required for intercity rail passenger service," the Supreme Court concluded that "Amtrak can find that an acquisition is required when it is a useful and appropriate way to accomplish its goals." *National Railroad Passenger Corp.*, 503 U.S. at 419 (discussing a parallel statute which makes Amtrak's condemnation powers pursuant to 45 U.S.C. § 562(d), subject to approval by the Interstate Commerce Commission (ICC)). It reached this conclusion by drawing on bedrock jurisprudence *McCulloch v. Maryland*, 4 Wheat. 316, 413, 4 L.Ed. 579 (1819), where Chief Justice Marshall had interpreted the word "necessary" to mean "convenient or useful." Similarly, I conclude that "necessary" should be construed to mean that Amtrak finds that an acquisition is a useful and appropriate way to accomplish its goals. The Guilbeaults argue that the use of the word "necessary" signi-

fies a more limited delegation of eminent domain power to Amtrak than granted by 45 U.S.C. § 562(d) because the Amtrak taking of private property is not subject to ICC oversight. However, § 24311(c) governing Amtrak's authority to condemn rail carrier property interests subject to ICC approval also uses the word "necessary." These back-to-back statutory sections undercut this argument.

■ Amtrak argues that its business judgment concerning the necessity of the taking is not subject to any judicial review. This argument is off-the-beaten-track of long-standing Supreme Court precedent which suggests "that delegations of eminent domain power to private entities are of a limited nature." *National Railroad Passenger Corp.*, 503 U.S. at 421, citing *United States v. Carmack*, 329 U.S. 230, 243 n. 13, 67 S.Ct. 252, 91 L.Ed. 209 (1946); *National R.R. Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261, 1264–65 (2d Cir.1987) (holding that Amtrak has been granted "a limited power within the meaning of [*Carmack*] to condemn land 'required [for] intercity rail passenger service' "). Accordingly, this Court has the authority to review Amtrak's decision and to determine if it has abused its discretion by making an unreasonable business judgment that the condemnation of the property is necessary. *See Boston & Maine Corp.*, 503 U.S. at 421 (recognizing Amtrak's authority to make a "reasonable business judgment that condemnation of the property is advisable").

■ The Guilbeaults allege that Amtrak abused its discretion by acting outside of its authority and claim that the property is not "necessary" for rail service for four reasons. First, they insist that Amtrak owns another vacant let of land directly abutting the railway tracks which they claim is a more suitable site for a electrical tower. Second, they claim that the railroad has decided not to use this property with direct access to the rail because of environmental contamination, but this contention is without record support. They also point out (without an affidavit) that the alternative site is not near residential housing. Finally, the Guilbeaults argue that Amtrak's easement should be restricted be-

cause there is an available existing sewer easement over their land which would be less intrusive.

There are two flaws in this argument. First, the Guilbeaults have not provided any evidence that Amtrak's decision to condemn the property was anything other than a reasonable business judgment. Amtrak has offered testimony of an experienced electrical engineer of the several factors it considered in determining the location of the electrical tower, including the electrical requirements of the railroad, the location of ether power facilities, and the industrial purpose for which the surrounding land is utilized. Amtrak submits sworn testimony that the alternative site is bordered by residential units and an elementary school. The Guilbeaults have offered no admissible evidence from a qualified expert to the contrary. They are in the welding business and are not qualified to render their own opinion as to necessity. The Guilbeaults also have not offered admissible evidence as to the positioning of the Amtrak easement to demonstrate that the taking of the easement property is an abuse of discretion.

Second, the parcel of land which the Guilbeaults urge as a suitable alternative is not owned by Amtrak but by the MBTA. Amtrak has no statutory eminent domain authority with respect to the property owned by governmental entities. Even if the property was deemed to be owned by another rail carrier, the statute provides that Amtrak cannot acquire rail carrier property if "the obligations of Amtrak to provide modern, efficient, and economical rail passenger transportation can be met adequately by acquiring an interest in other property, either by sale or by exercising its rights of eminent domain." 49 U.S.C. § 24311(c)(1). Given the proximity of the other site to residential units and the school, they have failed to show this is an adequate alternative site.

### 3. Just Compensation

Finally, standing may be a problem. The Guilbeaults do not currently own the land, but merely occupy it for $800 a month, pending settlement or a successful appeal. "Generally, only persons with ownership interests at the time of the taking are entitled to compensation for a taking." *United States v. 99.66 Acres of Land,* 970 F.2d 651, 658 (9th Cir.1992); *see also United States v. 125.07 Acres of Land More or Less,* 753 F.Supp. 1034, 1037 (D.Mass.1991). However, "[i]t has long been established that the holder of an unexpired leasehold interest in the land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation by the United States." *Alamo Land & Cattle Co., Inc. v. Arizona,* 424 U.S. 295, 303, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976). Here there is no leasehold, but merely an agreement for use and occupancy pending appeal.

The Guilbeaults argue they have a right to just compensation equal to the interest taken by Amtrak, and contest the reasonableness of the amount Amtrak deposited.

Amtrak has not moved for summary judgment on the issue of the amount of just compensation or the adequacy of the property interest asserted by the Guilbeaults. A just compensation hearing pursuant to 49 U.S.C. § 24311(b)(3) will be scheduled.

### ORDER

The plaintiff's motion for summary judgment (Docket No. 22) is hereby **ALLOWED**. The Court declares that title is vested in Amtrak and orders that immediate possession of the property be granted to Amtrak forthwith. Within twenty (20) days of the receipt of this Order, the defendants shall submit an affidavit detailing the amount they claim is due for their interest in the condemned land. A hearing will be held on Thursday, April 30, 1998 at 2:30 p.m.