Charles D. **FOLEY**, Jr., Plaintiff,

v.

**TOWN OF RANDOLPH**, Richard W. Wells, in his official capacity, Paul J. Connors, in his official capacity, William Alexopoulos, in his official capacity, Maureen C. Kenny, in her individual and official capacities, James F. Burgess, Jr., in his individual and official capacities, Defendants.

Civil Action No. 07–12213–PBS.

United States District Court, D. Massachusetts.

March 11, 2009.

Paul R. DeRensis, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, John C. Foskett, Deutsch, Williams, Brooks, DeRensis & Randolph Holland, P.C., Kimberly M. Saillant, Deutsch, Williams, Brooks, DeRensis Holland, Boston, MA, for Defendants.

Linda J. Evans, Kevin G. Powers, Rodgers, Powers & Schwartz LLP, Boston, MA, for Plaintiff.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Plaintiff Charles D. Foley, Jr., Chief of the Town of Randolph Fire Department ("Plaintiff," "Foley"), alleges that Defendants, the Town of Randolph, and its five selectmen (Richard W. Wells, Paul J. Connors, William Alexopoulos, Maureen C. Kenny, and James F. Burgess, Jr.), unlawfully retaliated against him in violation of his First Amendment rights when they suspended him for fifteen days because of comments he made at the scene of a fatal fire.[1] Plaintiff and Defendants have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. After hearing and a review of the submissions, this Court **ALLOWS** Defendants' motion for summary judgment on Plaintiff's claim pursuant to 42 U.S.C. § 1983 (Count I),

---

1. The complaint asserts violations of the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count I); Part I, Declaration of Rights, Article XVI of the Massachusetts Constitution (Count II); and Mass. Gen. Laws. ch. 149 § 185 ("the Massachusetts Whistleblower Statute") (Count III). Plaintiff also alleges that Defendants breached Plaintiff's employment contract and/or violated Mass. Gen. Laws. ch. 48 § 42 (" 'strong' Chief statute") (Count IV) and that Defendants Burgess and Kenny intentionally interfered with Plaintiff's contractual and/or economically advantageous relationship with the Town of Randolph (Count V).

*DENIES* Defendants' motion on the remaining counts, and *DENIES* Plaintiff's motion for summary judgment. I dismiss without prejudice the state law claims.

## II. FACTUAL BACKGROUND

The following facts are undisputed except where stated. Plaintiff was hired as Chief of the Randolph Fire Department in 2002. In 2003, Foley and the Town entered into a contract which provided for annual renewals through June 2006. In 2006, however, Foley and the Randolph Board of Selectmen were unable to negotiate a new employment contract. Instead, the Selectmen reappointed Foley as Fire Chief on October 31, 2006 under the provisions of the so-called "strong" chief statute, Mass. Gen. Laws ch. 48, § 42.

On May 17, 2007, there was a fatal fire in Randolph in which two children, ages seventeen and ten, died. At the scene of the fatal fire, the State Fire Marshal and Plaintiff answered questions from the media. The State Fire Marshal had convened the press conference.[2] Foley was in uniform and fire suppression activities were still ongoing when he spoke, though Foley states that, by that time, the fire was under control and he had relinquished oversight of the fire to the deputy. Speaking to the media, Foley pointed out what he considered to be inadequate staffing and poor funding of the Randolph Fire Department and stated that the firefighting operation would have gone more professionally and more according to standard if the department had more manpower. However, he also indicated the outcome might not have been different even without these alleged budgetary shortfalls.

At the scene of the fire, Plaintiff also voiced his frustration with the reduction in the number of firefighters to Defendant James F. Burgess, Jr., a Randolph Selectman. According to Defendants, Foley grabbed a draft of a reporter's news article and "shoved it forcefully" into Burgess' chest. (Burgess Aff. ¶ 3.) Plaintiff disputes this allegation, stating that the paper never actually touched Burgess.

Later that day, in a phone call with Foley, Defendant Maureen Kenny, a Selectwoman of Randolph, criticized him for discussing staffing and budget issues at the fire site rather than focusing on the children's deaths and the firefighters' heroism.

Subsequent to these events, disciplinary charges were brought against Foley. It was alleged that Foley's statements to the media at the fire scene "demonstrated a lack of sound judgment and of accuracy" and were "not conducive to the town's mission of providing effective firefighting services"; that Plaintiff had "initiated inappropriate physical contact" with a Selectman; and that, when interacting with Selectwoman Kenny at the scene, Plaintiff had "displayed a lack of demeanor, ability, and independent judgment required for competent command." ("Hearing Officer's Report" at 1) (Burgess Aff., Ex. A.) The Board of Selectmen appointed a hearing officer to evaluate the allegations and to determine whether there was cause to discipline Plaintiff. After a three-day hearing in the summer of 2007, the hearing officer concluded that Plaintiff did "initiate inappropriate and unprovoked physical contact" with Selectman Burgess and that he had made "inappropriate, inaccurate, intemperate, and misleading statements to the news media." (*Id.* at 10.)[3] Charac-

---

**2.** Foley emphasizes that he did not convene the press conference and generally resists the "press conference" label. Instead, Foley characterizes his actions as voluntarily answering questions from media members who were present at the scene.

**3.** As to the third allegation, the hearing officer concluded that, while Plaintiff was emotional at the scene, his emotions did not impair his ability to be in command.

terizing Plaintiff's statements to the media at the fire scene as "unprofessional, inappropriate and unbecoming to a Fire Chief," the hearing officer recommended that Plaintiff be suspended without compensation for fifteen days. (*Id.*)

On September 10, 2007, the Selectmen voted, three-to-two, to adopt the hearing officer's recommendation and suspended Plaintiff for fifteen days. The Selectmen notified Plaintiff, in writing, that this fifteen-day suspension would begin on September 17, 2007. (Burgess Aff., Exh. B.) As a result of the suspension, Plaintiff incurred a loss of $6,100 in salary.

Neither the contract which governed Plaintiff's employment from 2003–2006 nor the "strong" chief statute specifically authorizes or requires Plaintiff to make public statements on matters of public safety as part of his official duties as Chief of the Fire Department. At the same time, nothing in the contract or the statute prohibits or restricts Plaintiff from doing so. In 2006, during the failed contract negotiations between Foley and the Board of Selectmen, Foley proposed a provision that specifically granted him, as Fire Chief, the authority to make public statements on matters of public safety. While Plaintiff contends that, during contract negotiations, the Town specifically rejected that provision, Defendants dispute any suggestion that the Board of Selectmen rejected only that language or that their ultimate refusal to enter a new employment contract with Foley was premised on the referenced language.

Prior to the incident in question, Foley had answered media inquiries, conducted press conferences, and made public statements to the media regarding the Fire Department and its activities, events, and incidents. Plaintiff has emphasized that, in his view, all such communications were done entirely on his own volition; he disputes any characterization of these media communications as a required—or implicitly authorized—part of his job.

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations in *Anderson* omitted)). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995).

### B. Public Employee's Speech

■ Although a public employee "must accept certain limitations on his or her

freedom," it is well established that "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). "The First Amendment protects a public employee's rights, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.*; *see Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

The key issue in Foley's First Amendment claim is whether his speech at the press conference falls within the realm of protected public employee speech. Specifically, the question is whether, when speaking at the May 17, 2007 press conference, Foley was speaking "as a citizen" or pursuant to his official job duties. Under *Garcetti v. Ceballos*, 547 U.S. 410, 417–18, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the former (speech as a citizen) may garner constitutional protection while the latter (speech pursuant to one's job duties) cannot.

### 1. Garcetti

In *Garcetti*, a deputy district attorney claimed that he suffered a series of retaliatory employment actions, including demotion, after he wrote a memorandum to his supervisors recommending dismissal of a prosecution because of flaws in an affidavit. Rejecting his claim that these actions were in violation of his First Amendment rights, the Supreme Court held that the deputy did not enjoy First Amendment protection for his statements in the memo because he had drafted the document "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. Because drafting the memorandum was "part of what he, as a calendar deputy, was employed to do," the plaintiff had not spoken as a citizen, and thus the First Amendment did "not insulate [his] communications from employer discipline." *Id.* ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes.").

▮▮▮ *Garcetti* "clarified and expanded on the earlier law," articulating a two-step initial inquiry for public employee First Amendment claims. *Curran*, 509 F.3d at 44; *see Philip v. Cronin*, 537 F.3d 26, 32 (1st Cir.2008) ("*Garcetti* somewhat modifies the prior test articulated under *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)"); *Reilly v. City of Atlantic City*, 532 F.3d 216, 228 (3d Cir.2008) ("*Garcetti* simply narrowed the Court's jurisprudence in the area of employee speech by further restricting the speech activity that is protected.") (internal quotation marks omitted). The first step is to ask "whether the employee spoke as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951. As the First Circuit has noted, "this first step itself has two subparts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern." *Curran*, 509 F.3d at 45 (citing *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951).[4] If either of these two

---

**4.** At least two circuits have concluded that *Garcetti* demands that the sub-parts be addressed in this particular order. *See, e.g., Mills v. City of Evansville*, 452 F.3d 646, 647–48 (7th Cir.2006) ("*Garcetti* ... holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her

public job."); *see also Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir.2008) (stating that "it is clear that *Garcetti* added a threshold layer to our previous analysis" and adopting the Seventh Circuit's articulation of the test in *Mills*); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir.2007) ("Under *Garcetti*, we must shift our focus from the

sub-parts are answered in the negative, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951. It is only after a determination that the employee was speaking as a citizen and on a matter of public concern, that the "possibility of a First Amendment claim arises, and the second step of the inquiry is made: 'The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" *Curran,* 509 F.3d at 45 (quoting *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951). Both prongs of the analysis are decided by the court as a matter of law. *Curran,* 509 F.3d at 45.

### 2. "As a citizen" or "Pursuant to Official Duties"?

Citing *Garcetti,* Defendants argue that Plaintiff's First Amendment rights were not violated because, in their view, he made his statements as part of his official duties as Fire Chief. Plaintiff responds that he is entitled to First Amendment protection because he was speaking as a private citizen on a matter of public concern.

The inquiry into whether a public employee spoke as a citizen or pursuant to his or her job duties is "a practical one." *Garcetti,* 547 U.S. at 424, 126 S.Ct. 1951. In *Garcetti,* the parties agreed that the memorandum was drafted pursuant to the plaintiff's employment duties; accordingly,

the Court "[had] no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* The Court did, however, stress the "practical" nature of the inquiry and explicitly instructed that the test should not focus solely on "[f]ormal job descriptions" because they "often bear little resemblance to the duties an employee actually is expected to perform." *Id.* at 424–425, 126 S.Ct. 1951. Thus, "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 425, 126 S.Ct. 1951.

Defendants emphasize that Foley was "on duty at the fire scene, in full uniform and superintending the activities" of his firefighters when he participated in the press conference. (Defs.' Mem. 9) (Docket No. 34.) Plaintiff argues that none of these facts, on their own, establish that Foley was speaking pursuant to his duties as Fire Chief.[5] Instead, Plaintiff asks this Court to focus on the target of the speech. *See Modica v. Humphrey,* No. A–02–CA–722, 2007 WL 2777779, at *4, 2007 U.S. Dist. LEXIS 70057, at *12 (W.D.Tex. Sept. 21, 2007) (concluding that the target of the speech "has much to do with determining whether the speech was a statement[ ] pursuant to their official duties" and that a court which ignores this factor would be "abjuring its responsibilities in conducting the practical inquiry directed by *Garcet-*

---

content of the speech to the role the speaker occupied when he said it.'').

**5.** Plaintiff cites *Brasslett v. Cota,* 761 F.2d 827, 831, 846 (1st Cir.1985) for the proposition that Plaintiff's uniform is not dispositive. In *Brasslett,* a fire chief, in dress uniform gave an interview in which he discussed concerns about the adequacy of fire vehicles. Relying on *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88

S.Ct. 1731, 20 L.Ed.2d 811 (1968), the First Circuit concluded that the chief had addressed a matter of public concern and held that the speech was protected by the First Amendment. However, as the First Circuit has subsequently indicated, the *Pickering* test for evaluating the First Amendment rights of public employees has been modified by *Garcetti. See Philip v. Cronin,* 537 F.3d 26, 32 (1st Cir.2008); *Curran,* 509 F.3d at 44–45.

*ti* ") (internal quotation marks omitted). Foley distinguishes his speech, which he characterizes as directed to the citizens of Randolph, from the internal memorandum directed to a supervisor at issue in *Garcetti* and contends that this distinction is sufficient to spare his claim. *See Davis v. McKinney,* 518 F.3d 304, 313 (5th Cir. 2008) (surveying post-*Garcetti* caselaw and concluding that complaints raised up the chain of command in a public workplace are often viewed as being pursuant to one's job duties while "external communications" in which a public employee raises concerns to persons outside the workplace are "ordinarily not made as an employee, but as a citizen"); *Hailey v. City of Camden,* No. 01–3967, 2006 WL 1875402, at *15–16, 2006 U.S. Dist. LEXIS 45267, at *45–47 (D.N.J. July 5, 2006) (holding that deputy fire chiefs spoke as citizens, not pursuant to their job duties, when they voiced complaints in the newspaper and at City Council meetings).

Plaintiff is correct in his assertion that neither his uniform nor his presence at the fire scene is itself dispositive. *See Garcetti,* 547 U.S. at 420, 126 S.Ct. 1951 (the fact that a public employee made a statement while "at work" is not dispositive and does not foreclose the possibility of First Amendment protection). However, these facts are each relevant and important to the inquiry. Likewise, Plaintiff's preferred factor—the target of the speech— also does not resolve the question. *See Modica,* 2007 WL 2777779, at *4, 2007 U.S. Dist. LEXIS 70057, at *12 (stating that the target of the speech is relevant, but not dispositive because "no single factor, standing alone, is [dispositive]").

Foley's remaining—and most repeated—argument is that because neither his contract nor the "strong" Chief statute explicitly requires him to make public statements or engage with the media, he could not have been acting pursuant to his official duties during his fireside press colloquy. In particular, Plaintiff makes much of the Town's refusal to include a specific provision regarding media relations within Foley's contract. However, in *Garcetti* the Supreme Court made clear that "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." 547 U.S. at 425, 126 S.Ct. 1951. Instead, courts are instructed to take a "practical" view and consider the duties an employee actually performs—or is expected to perform. *Id.* at 424–25, 126 S.Ct. 1951. It is thus relevant that Plaintiff has, in the past, answered media inquiries and conducted press conferences regarding Randolph's Fire Department and its activities, events, and incidents.

Two Fifth Circuit cases are instructive. First, in *Williams v. Dallas Independent School District,* 480 F.3d 689 (5th Cir. 2007), the Fifth Circuit considered "the extent to which, under *Garcetti,* a public employee is protected by the First Amendment if his speech is not necessarily required by his job duties but nevertheless is related to his job duties." 480 F.3d at 693. In *Williams,* a high school athletic director and head football coach was removed after he sent two memoranda to the high school's office manager and principal questioning the handling of school athletic funds. After surveying pre- and post-*Garcetti* caselaw, the court concluded that, the cases generally "distinguish between speech that is 'the kind of activity engaged in by citizens who do not work for the government' and activities undertaken in the course of performing one's job." *Id.* at 693–94 (internal citation to *Garcetti* omitted). Stating that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties," the

*Williams* court then examined the content and circumstances of the memorandum to determine whether the plaintiff had drafted it in the course of performing his job. *Id.* at 693. Noting that the memoranda focused on the plaintiff's "daily operations," included accusations that the office manager's practices had "hurt [the plaintiff's] ability" to perform his job, and reflected "special knowledge" gained by the plaintiff as a result of his position, the *Williams* court held that the plaintiff had drafted the memo in the course of performing his job and thus "the speech contained therein is not protected by the First Amendment." *Id.* at 694. Notably, the *Williams* court emphasized that "[t]his is not a case where [the plaintiff] wrote to the local newspaper or school board with his athletic funding concerns." *Id.* at 694 n. 2 (citing *Garcetti*, 547 U.S. at 422, 126 S.Ct. 1951.)

Next, in a factually similar case to this one, the Fifth Circuit ruled that a public employee's statements to the media at the scene of an accident were not protected by the First Amendment. *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir.2007). In *Nixon*, a police officer was suspended for fifteen days before being terminated from the Houston Police Department ("HPD") for, among other things, statements he made "to the media while on duty, in uniform, and while working at the scene of the accident." *Id.* In his statements, Nixon had criticized a police department decision and its high-speed chase policy, stating that he was "embarrassed to be a police officer." *Id.* at 497. Nixon was not designated as a HPD spokesperson and was not authorized to make statements to the media at the scene of the accident. *Id.* at 496. The court found that the officer's statement "was intended to inform the public of the circumstances of the high-speed chase, the subsequent accident, and HPD's high-speed chase policy." *Id.* at 498. The court concluded that "[t]he

fact that Nixon's statement was unauthorized by HPD and that speaking to the press was not part of his regular job duties is not dispositive—Nixon's statement was made while he was performing his job." *Id.* at 498–99; *accord Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir.2008) (rejecting plaintiff's argument that because her speech went "beyond her normal day-to-day duties" it was entitled to First Amendment protection and explaining that the "practical inquiry" required by *Garcetti* must consider both a plaintiff's "day-to-day duties and her more general responsibilities"). Referencing a department media policy stating that, in emergency situations, officers will provide the media with information, the *Nixon* court added that "speaking with the media is arguably one of an officer's job responsibilities." *Id.* at 499. Finally, the court emphasized that the officer's speech held " 'no relevant analogue to speech by citizens.' " *Id.* at 498 (quoting *Garcetti*, 547 U.S. at 424, 126 S.Ct. 1951).

■ As in *Nixon*, Foley was suspended for fifteen days after he spoke to the media at the scene of a public emergency, about the situation and the circumstances surrounding it, while on duty and in uniform. Even if not a required job duty, Foley's past interactions with the media demonstrate that such activities are at least "arguably one of [his] job responsibilities." *Nixon*, 511 F.3d at 499. This notion is further supported by a 2006 written performance evaluation (signed in acknowledgment by Plaintiff) which evaluated Plaintiff in the category of "Public and Community Relations/Communications" and includes a statement that Plaintiff "[i]nteracts well with the media." (Burgess Aff., Ex. C.) Also, like the plaintiff in *Williams*, Foley's speech was directly related to a clear job duty (suppressing the May 17th fire) and contained accusations

that town policy had hurt his (and the Randolph Fire Department's) ability to perform that particular task. And just as the *Williams* court distinguished the athletic director from the plaintiff in *Pickering,* whose "position as a teacher in the district did not qualify him to speak with any greater authority than any other taxpayer," Foley's speech reflected "special knowledge" that he had gained as a result of his official position. *Williams,* 480 F.3d at 694 (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 572, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

Moreover, and perhaps most telling, the opportunity for Foley to speak at this particular press conference arose because of his official position; this was not a forum at which any citizen could speak. *Cf. Tamayo v. Blagojevich,* 526 F.3d 1074, 1092 (7th Cir.2008) (holding that the testimony of a senior administrator of a state agency before a legislative committee was unprotected speech since the administrator was testifying "because of the position she held within the agency" and was "not appearing as 'Jane Q. Public'"). In *Garcetti,* the Supreme Court distinguished between speech activities regularly engaged in by citizens who do not work for the government (e.g., writing a letter to a newspaper) and those that come as a result of a public employee's employment responsibilities. 547 U.S. at 423–24, 126 S.Ct. 1951. For the latter, "there is no relevant analogue to speech by citizens who are not government employees," and there is therefore no First Amendment protection. *Id.* at 424, 126 S.Ct. 1951.

This principle also distinguishes the case at hand from two cases on which Plaintiff relies. In *Hailey v. City of Camden,* No. 01–3967, 2006 WL 1875402, at *15–16, 2006 U.S. Dist. LEXIS 45267, at *45–49 (D.N.J. July 5, 2006), two deputy fire chiefs had complained about safety, overtime, and hiring practices to the newspaper and City Council. Noting that the plaintiffs had "placed their names on the agenda as any citizen would," the court concluded that the deputy chiefs had spoken as citizens, not pursuant to their job duties, and were thus entitled to First Amendment protections. *Hailey,* 2006 WL 1875402, at *15, 2006 U.S. Dist. LEXIS 45267, at *46. Likewise, in *Snelling v. City of Claremont,* 155 N.H. 674, 931 A.2d 1272, 1281 (2007), the Supreme Court of New Hampshire held that a city tax assessor was speaking as a citizen, not pursuant to his job duties, when he voiced his opinions about the fairness and potential abuse of the city's tax system to a newspaper reporter. Having determined that such topics fell beyond his official duty to communicate with the public about issues relating to property valuation and assessments, the *Snelling* court concluded that the tax assessor's comments "were like the protected expressions made by the speaker in *Pickering,* whose communication with a newspaper had no official significance and bore similarities to communications submitted by numerous citizens everyday." *Id.* at 682, 931 A.2d 1272 (citing *Garcetti,* 547 U.S. at 422, 126 S.Ct. 1951) (contrasting the expressions in *Garcetti* to those made by the speaker in *Pickering* ).

Had Foley been disciplined for voicing his concerns and frustrations at another forum—whether a town meeting, a letter to the editor, or even a statement to the media made at a different time and/or place—the outcome may have been different. However, under these circumstances, as in *Nixon,* there is "[q]uite simply 'no relevant analogue to speech by citizens.'" *Nixon,* 511 F.3d at 498 (quoting *Garcetti,* 547 U.S. at 424, 126 S.Ct. 1951).

There is no doubt that the issue discussed by Foley was a matter of public concern which may give him some protection under the Massachusetts Whistleblow-

er Statute and other state law. However, because Plaintiff's statements during the press conference on May 17, 2007 at the scene of a fire were made pursuant to Plaintiff's official job duties, his statements are not protected by the First Amendment under current Supreme Court jurisprudence.

## IV. ORDER

Defendant's motion for summary judgment [Docket No. 33] is **ALLOWED** with respect to Count I and **DENIED** with respect to the other counts. Plaintiff's motion for summary judgment [Docket No. 21] is **DENIED** with respect to all counts. The state law claims are dismissed without prejudice.